# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TREENA K. LITTLE,

        Plaintiff,

v.                              CIVIL ACTION NO.   6:13-cv-25924

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Treena K. Little's Complaint (ECF 2) seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). By standing order entered April 8, 2013, and filed in this case on October 24, 2013, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition ("PF&R"). On January 28, 2015, Magistrate Judge Tinsley entered his PF&R (ECF 15), which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.

Plaintiff filed timely objections to the PF&R on February 12, 2015. (ECF 16) For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

### *I. BACKGROUND*

The facts concerning this matter are more fully set forth in the PF&R and need not be repeated here at length. Plaintiff filed an application for supplemental security income under

Title XVI of the Social Security Act and for disability insurance benefits under Title II of the Social Security Act on November 5, 2010. (Tr. at 154, 161). Plaintiff alleged disability as of January 24, 2002 (Tr. at 181, 204), due to seizures, panic disorder, post-traumatic stress disorder, anxiety, and bipolar disorder (Tr. 209). The application was denied initially and upon reconsideration. (Tr. at 79–92, 96–101.)

A hearing was held by video before Administrative Law Judge John Rolph on June 21, 2012. (Tr. at 39–78.) On July 16, 2012, the ALJ issued an unfavorable decision. (Tr. at 17–38). The Appeals Council denied review of the ALJ's decision on August 28, 2013. (Tr. at 1–6.) Thereafter, on October 17, 2013, Plaintiff filed her Complaint in this Court. (ECF 2.)

## II. LEGAL STANDARD

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine *de novo* any part of a magistrate judge's disposition to which a proper objection has been made. The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of *de novo* review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Assuming error by the Commissioner, "reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached'" by the ALJ. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

*III. DISCUSSION*

*1. Whether the Record Was Sufficiently Complete, or Whether the ALJ was Required to Order a Consultative Psychological Examination*

The primary issue posed by Plaintiff's objection is whether the ALJ erred in failing to order a psychological examination to clarify Plaintiff's mental health diagnoses and limitations prior to making a decision. Plaintiff argues that the ALJ had a duty to do so under *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986), and that the ALJ's failure to do so resulted in an incomplete record.

Plaintiff bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim.[1] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

At Step 1, an ALJ must determine whether a claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). Here, the ALJ determined that

---

[1] "Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981).

4

Plaintiff had not engaged in substantial gainful activity since January 24, 2002, the alleged onset date. (Tr. at 23.)

At Step 2, an ALJ must determine whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). Here, the ALJ determined that as of June 30, 2006, the date last insured, Plaintiff had a medically determinable impairment—single episode major depression—but that it was not a severe impairment. (Tr. at 23–26.) The ALJ also determined that as of November 5, 2010, the date Plaintiff filed her Title XVI application, Plaintiff had four medically determinable impairments—single episode major depression, anxiety disorder "not otherwise specified," bipolar disorder "by history," and seizure disorder. (Tr. at 26–28.) Of these, the ALJ determined that only one was severe—seizure disorder. (Tr. at 26–28.)

At Step 3, if an impairment which enabled the claimant to survive Step 2 is on the list of impairments found in Appendix 1 to Subpart P of 20 C.F.R. § 404, the claimant qualifies as disabled. Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013); C.F.R. §§ 404.1520(d) and 416.920(d). Here, the ALJ found that Plaintiff's seizure disorder did not meet or equal the severity of one of the listed impairments in Appendix 1. (Tr. at 28.)

At Step 4, the ALJ found that Plaintiff still has the residual functional capacity to perform medium work, with certain limitations, and that this enables her to perform past relevant work as a telemarketing supervisor and as a computer repairperson. (Tr. at 28–34) Thus, the ALJ did not proceed to Step 5.

5

Plaintiff objects to the magistrate judge's finding that the ALJ did not err in failing to order a psychological examination of Plaintiff. (ECF 16 at 2.)

The claimant bears the burden of establishing a disability. 20 C.F.R. §§ 404.1512(a) and 416.912(a). *See also Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.704 ("When evidence is needed to prove your eligibility or your right to continue to receive benefit payments, you will be responsible for obtaining and giving the evidence to us."). Once a claimant has made a substantial but incomplete showing, the Fourth Circuit in *Cook v. Heckler* has stated that the ALJ also has a "responsibility to help develop the evidence." 783 F.2d 1168, 1173 (4th Cir. 1986).[2] "The ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* Development of the record "may" include ordering consultative examinations "when evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b). However, as the Fourth Circuit clarified in *Shingleton v. R.R. Ret. Bd.,* "[t]he holding[] in *Cook* . . . deal[s] with the situation where, though the claimant's evidence is not compelling, it is also unrefuted, the countervailing fact not supported by substantial evidence. That contrasts sharply with the situation where the evidence

---

[2] In *Cook*, the ALJ made a determination that the claimant's arthritis did not meet or equal a listed impairment presumably without having any evidence in the record that was pertinent to the criteria of the listed impairment. *Id.* The Court identified some of the medical findings that should have been considered in determining whether or not the claimant met the listed impairment, adding "[w]ithout any of the tests and physician's opinions described above, it is impossible to tell whether Cook meets the requirements in the list of impairments. It must have been impossible for the ALJ to tell whether she did or did not." *Id.*

contrary to the claimant is substantial even though rebutted." 862 F.2d 870 (4th Cir. 1988) (unpublished opinion). Where there are inconsistencies in the medical evidence, "it is the responsibility of the Secretary . . . to reconcile [them], and . . . the claimant bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

Here, Plaintiff argues that the ALJ should have referred Plaintiff for a psychological evaluation "to clarify her mental health diagnoses and limitations prior to making his decision." (ECF 16 at 5.) Plaintiff's objections do not specify the diagnoses and limitations to which she refers. However, they point out that at the hearing before the ALJ, Plaintiff's non-attorney representative requested that the ALJ send Plaintiff for a "head or psychological" consultative exam due to "all the memory and cognitive symptoms that were noted throughout the record and her history of having been physically abused." (ECF 16 at 4.) In addition, Plaintiff argued in her brief in support of judgment on the pleadings that the ALJ should have ordered a psychological consultative examination to "assess the severity of Plaintiff's major depressive disorder and as well any other mental impairments that may have coexisted." (ECF 12 at 10.)

The Court rejects Plaintiff's unfocused, open-ended invitation for the Court to scour the medical record for unspecified "mental health diagnoses and limitations" and "other mental impairments" which might be in need of clarification, or for "all the memory and cognitive symptoms that were noted throughout the record" from which such diagnoses or limitations might stem. The record discloses a number of alleged mental symptoms. Plaintiff's objections sample but a few of them:

> Here, Little reported mental health symptoms throughout the record to physicians with whom she treated. (Tr. 224-24, 312, 342, 352-353, 349, 374, 387-389, 395-400, 404-405, 443-445, 460-464.) Additionally, in the Function Report Little completed shortly after she filed her applications Little noted significant

7

> inability to sleep due to anxiety (Tr. 218); forgetfulness (Tr. 219); disorientation when going places (Tr. 220); slowing of the ability to handle money due to concentration problems (Tr. 221); slow thoughts, delay in recall, and memory loss (Tr. 221); fearfulness of mean [*sic*] and being alone with people (Tr. 222); and an ability to pay attention for only thirty minutes (Tr. 222). Little also stated in that report that "memory is broken or paused during activities (I forget what I am doing or was about to do)," "I have to force myself to stay focused or I forget what I was doing," and "need clear written instruction" in order to understand (Tr. 224).

(ECF 16 at 4). Here, all of the mental symptoms Plaintiff claimed in her application have been the subject of a sustained, long-term process of consultation and treatment by medical professionals. The Court should not be asked to shoulder the impossible burden of determining whether each of the scores of symptoms Plaintiff has reported (or failed to report) to medical professionals has been duly examined. An objection that would require the Court to sift through all of Plaintiff's alleged symptoms in the record to determine whether Plaintiff suffers from unspecified untreated impairments is one that crosses into the realm of the conclusory. The Court will therefore limit itself to considering whether the ALJ was required to order a consultative psychological examination as to the five alleged impairments listed in Plaintiff's disability application, as well as depression, with which Plaintiff was diagnosed.

The Court finds that this case is distinguishable from *Kersey v. Astrue*, 614 F. Supp. 2d 679 (W.D. Va. 2009), on which Plaintiff relies. In *Kersey*, the district court remanded a disability claim to the ALJ for further development of the record where the plaintiff had complained of both physical and mental impairments, yet the ALJ had rendered a decision when the record did not contain any medical opinion assessing the plaintiff's alleged mental impairments. *Id.* at 693–94. That is not the case here. All of Plaintiff's alleged impairments—seizures, panic disorder, post-traumatic stress disorder, anxiety, and bipolar

8

disorder—as well as depression, have been the subject of consultations with and opinions by medical professionals.

The medical record is ably summarized in the PF&R. (*See* ECF 15 at 5–10). In brief, Plaintiff was hospitalized for depression for four days in 2001 (Tr. at 311–332) and referred for a depression evaluation at a free clinic later that year (Tr. at 273–274.). From 2003 to 2009, no medical records are available for Plaintiff. From 2010 onward, however, Plaintiff received regular treatment at the Clarksburg Veterans Affairs Medical Center. She initially reported seizures, anxiety attacks with chest pain, and PTSD to her primary care physician Windell T. Chua, M.D., who referred her for lab work, neurological assessment, and mental health evaluations. (Tr. at 354.) A CT scan was "unremarkable." (Tr. at 369.) An EEG was normal. (Tr. at 275–78, 410.) Plaintiff also saw physician assistant Kelly P. Cummings, M.S., PA-C, on half a dozen occasions. Cummings performing a series of mental health assessments on Plaintiff and made adjustments to Plaintiff's prescribed medications and doses. During this time, Plaintiff reported various symptoms including nightmares, "zoning out," intrusive thoughts, numbness and detachment from others, panic attacks with associated sharp chest pains and a sense of doom, periods of tiredness and periods with a decreased need for sleep, difficulty staying asleep, low energy, fidgety movements, panic, chest discomfort, and being "dazed." (Tr. at 350–53, 395–400, 405–08, 444, 448, 460.) Dr. Chua initially assessed seizure disorder "by history," depression, and PTSD (Tr. at 354); upon follow-ups he assessed only seizure disorder "by history" (Tr. at 338, 402). Cummings consistently assessed anxiety disorder, "rule out" PTSD, and bipolar disorder "by history." (Tr. at 350–53, 364–67, 391–94, 395–400, 405–08, 445.) Plaintiff screened negative for PTSD (Tr. 357–360, 390–92, 446), and negative (Tr.

9

at 365, 390–92, 405–08, 446) to mild (Tr. at 349, 395–400, 450) for depression. Although Plaintiff reported feeling more sedated and irritable on some of her medication dosages, medication reduced her anxiety, panic, and chest pains (Tr. 405–08), led to an "even" mood (Tr. at 448), and made her feel "80 or 90% better" (Tr. at 444; *see also id.* at 364, 462–63).

The record also contains the opinions of reviewing psychologists. Jeff Boggess, Ph.D., a specialist in clinical psychology, found there to be insufficient evidence in the record to evaluate Plaintiff's claim of disability prior to Plaintiff's date last insured of June 30, 2006. (Tr. 279, 291.) He found that as of January 5, 2010, Plaintiff had non-severe anxiety "not otherwise specified." (Tr. at 294, 299.) G. David Allen, PhD, a psychologist, found that the record revealed non-severe bipolar "by history" and anxiety disorder "not otherwise specified, rule out PTSD." (Tr. at 422–34.) He also found there to be insufficient evidence to assess the severity of Plaintiff's depression prior to 2010. (Tr. 434.)[3] Boggess and Allen both found that Plaintiff has no restriction of activities of daily living or episodes of decompensation of extended duration, and has only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 304, 432.) Boggess found that Plaintiff's mental health evaluations "do not show significant problems" and "showed no limitations" in Plaintiff's secondary to psychological issues. (Tr. 306.) Allen found Plaintiff's mental status exams to be "unremarkable" and that her treatment records indicate a good response to mood stabilizer medication. (Tr. 434.)

It is true that Plaintiff does not appear to have been clinically evaluated by a psychologist. The regulations do not require that the record contain an opinion from a treating psychologist.

---

[3] A reviewing physician, Dr. Uma Reddy, M.D., also found "[i]nsufficient evidence to evaluate the 2006 DLI claim." (Tr. at 418.) The Court notes that ordering a consultative opinion in this case would not fill the gap in Plaintiff's medical records prior to 2010.

10

"Medical opinions are statements from [*both*] physicians and psychologists." 20 C.F.R. § 404.1527(a)(2). A psychologist's opinion might have been entitled to substantial weight as to Plaintiff's alleged mental impairments. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). On the other hand, Plaintiff's physician's opinions would be entitled to substantial weight because they are based on a longitudinal picture. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . that cannot be obtained from . . . consultative examinations or brief hospitalizations."); 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The Court lacks the specialization to determine whether Plaintiff has received the best possible medical care or all the medical attention that she needs, and it is not the Court's or the ALJ's role to do so. Here, importantly, the Plaintiff has been seen repeatedly by medical professionals that have engaged in a long-term, iterative process aimed at diagnosing her mental symptoms and her response to different treatments. Her medical records were also reviewed by two psychologists. None of these professionals recommended referring Plaintiff for a consultation with a psychologist.

It is also true that Joyce Goldsmith, M.D., reviewing the medical record, stated that the severity of Plaintiff's "impairment" could not be assessed due to a lack of current findings. (Tr. at 309.) It appears that she referred to Plaintiff's seizure disorder, as she recommended only

11

that a neurologist be contacted to provide more information on Plaintiff's type of seizures, medication, compliance, frequency, number of seizures, and date of last seizure. (*Id.*) However, the ALJ gave Plaintiff the benefit of the doubt in assessing that she had a severe seizure disorder. (Tr. at 26–28.) And Plaintiff argues that the record lacks a psychological consultation, not a neurological consultation.

Thus, Plaintiff's first and primary objection is without merit.

*2. Whether Substantial Evidence Supported the ALJ's Finding as to the Severity of Plaintiff's Single Episode Major Depression*

Though less than crystal clear on this point, Plaintiff's objections may also be read to argue that substantial evidence did not support the ALJ's determination at Step 2 that Plaintiff's medically determinable impairment of single episode major depression was not severe.[4]

A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c) and 416.920(a)(c), for twelve consecutive months, 20 C.F.R. §§ 404.1509 and 416.909. The severity of purely mental impairments is assessed through application of a "special technique." *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a) (2011). The ALJ must rate the claimant's degree of limitation in four broad functional areas: activities of daily living; social functioning; concentration,

---

4 *See* ECF 16 at 3 ("The *Kersey* court concluded, as this court should, that 'there was no psychiatric or psychological evidence to support the ALJ's decision that Kersey's alleged mental impairments were non-severe.'"). The Court reads this sentence, itself not a model of clarity, as reasserting a similar argument raised by Plaintiff in her brief in support of judgment on the pleadings. *See* ECF 12 at 10 ("[T]he ALJ determined that the claimant had the medically determinable impairment of major depressive disorder—single episode during the relevant time period for the Title II claim, but found it not to be severe based on four broad functional criteria. This finding is not supported by the available evidence of record."). To the extent that Plaintiff may have intended to argue that substantial evidence did not support the ALJ's finding that her medically determinable anxiety disorder and bipolar disorder were non-severe, that argument does not appear to have been developed in her briefing before the magistrate judge, and the Court assumes that Plaintiff does not attempt to raise it now for the first time.

persistence, or pace; and episodes of decompensation. §§ 404.1520a(c)(4), 416.920a(c)(4). *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.05C (defining these terms). Ratings of "none" or "mild" in relation to the first three functional areas, coupled with a lack of prior episodes of decompensation, generally result in the mental impairment being categorized as "non-severe." §§ 404.1520a(d)(1) and 416.920a(d)(1).

The ALJ determined that Plaintiff suffered from no limitations with respect to the functional areas of daily living and social functioning, only mild limitations with respect to concentration, pace, and persistence. (Tr. at 26). Furthermore, the ALJ found no episodes of decompensation of extended duration. (*Id.*) In accordance with §§ 404.1520a(d)(1) and 416.920a(d)(1), the ALJ concluded that Plaintiff's single episode major depression was not a "severe" impairment. (*Id.*)

Substantial evidence supports the finding that Plaintiff suffered no limitations in daily living: From 2004 to 2008, she was able to take care of farm animals, including feeding, watering, grooming, training, handling, and teaching horses to lead rope. (Tr. 55, 71–72.) Her recent activities include setting up a campsite. (Tr. at 65.) She occasionally does computer repair or photography jobs. (Tr. at 73.) She and her husband recently bought and trained a new dog. (Tr. at 449, 452.) She provides for her clothing, food, and personal item needs through her volunteer work and odd jobs. (Tr. at 73.)

Substantial evidence supports the finding that Plaintiff suffered no limitations in social functioning: Plaintiff shared a farm for four years with a family, cooperating with others in such activities as going to the store and retrieving runaway farm animals. (Tr. at 55–57.) She volunteers for Parkersburg Coalition for the Homeless for three to four hours every couple of

13

days (Tr. at 65), "help[ing] out with clients from house to home" (Tr. at 73).

Substantial evidence supports the finding that Plaintiff suffered only mild limitations in concentration, pace, and persistence: The ALJ gave Plaintiff the benefit of the doubt, finding a mild limitation based on her allegation that she had difficulty processing her emotions and information. (Tr. at 26.) Further, Plaintiff worked for nine months as an assembly worker in 2003. (Tr. 196.) She has driven a car as recently as 2009. (Tr. at 55.)

Finally, the evidence of record reveals no extended episodes of decompensation since Plaintiff's hospitalization for depression in 2001, prior to the alleged disability onset date.

Thus, Plaintiff's second objection is also without merit.

## *IV. CONCLUSION*

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections [ECF 16], **ADOPTS** the PF&R [ECF 15] to the extent it is not inconsistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE